UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CALLAWAY GOLF COMPANY, | ) | Civil No. 09cv384 L(POR) |
| Plaintiff, | )<br>)<br>) | **ORDER GRANTING MOTION TO TRANSFER [doc. #4]; DENYING** |
| v. | )<br>) | **WITHOUT PREJUDICE MOTION TO DISMISS FOURTH CAUSE OF ACTION** |
| CORPORATE TRADE INC., | )<br>) | **[doc. #12]; GRANTING** *EX PARTE* **MOTION FOR LEAVE TO FILE** |
| Defendant. | )<br>) | **DECLARATIONS [doc. #24] and FOR LEAVE TO FILE NEWLY** |
| | ) | **DISCOVERED EVIDENCE [doc. #27]** |

Defendant Corporate Trade Inc. ("CTI") moves to dismiss, transfer or stay this action and to dismiss plaintiff's fourth cause of action under Federal Rule of Civil Procedure 12(b)(6). The motions have been fully briefed; however, plaintiff Callaway Golf Company ("Callaway") seeks leave to file declarations and newly discovered evidence in support of its opposition to CTI's motion to dismiss, transfer or stay the case.

**Background**

In September 2001, CTI and Spalding Sports Worldwide, Inc. ("Spalding"), a nonparty, agreed that Spalding would sell its excess sporting goods inventory to CTI in exchange for trade credits that Spalding could use for marketing and advertising that CTI would make available to Spalding. In December 2001, CTI and KSL Media, Inc. ("KSLM") agreed that KSLM would place media purchases on behalf of CTI's clients.

Callaway acquired certain of Spaulding's assets in mid-2003 and sought the assignment

and full use of the trade credit balance that CTI held in account for Spaulding.  On July 1, 2003, CTI and Callaway agreed to assign, *inter alia*, the trade credit balance to Callaway.  Callaway alleges in its complaint that the agreement was for CTI to transfer the Spalding trade credit balance to Callaway in exchange for Callaway switching its media placement and planning and all future media trading to CTI's designated media agency, KSLM, once Callaway's media agreement with Dailey & Associates expired.  However, CTI asserts that in consideration for the assignment and use of the trade credits, Callaway agreed it would provide to CTI either inventory of products equal to the value of the cash savings on media purchases that Callaway would realize from the use of the trade credits to purchase media; or alternatively, Callaway would pay cash to CTI calculated as 95% of the value of the cash savings on media purchases that Callaway realized from use of the trade credits to purchase media within 48 months of the use of the trade credits.  CTI points to a letter from CTI to Callaway dated July 10, 2003 that it contends recognizes and confirms the CTI Trade Credit Compensation Agreement.  (Exh. 3 to Declar. of Brian Egan.)  It is clear that the parties dispute the terms of the trade credit assignment.

There is no dispute, however, that Callaway executed several media purchase authorizations for print and broadcast media.  CTI sent a letter dated July 28, 2004 to Callaway that expressly provided an accounting of the cash-flow savings realized by Callaway in 2003 and 2004 from the use of trade credits to purchase media.  (Danzig Declar. Exh. Bates stamp 000255.)

In April 2008, CTI and Callaway entered into another agreement whereby CTI would provide information to Callaway concerning KSLM's alleged improper business practices toward Callaway and Callaway would pay to CTI a percentage of net money Callaway recovered from KSLM plus a percentage of cost saved based on the receipt of the information from CTI. ("Confidentiality Agreement").  Callaway recovered or avoided considerable costs from KSLM and as a result was to pay CTI fees of approximately $227,862.  Callaway proposed a written mutual release of all remaining claims under the Confidentiality Agreement in exchange for a one-time payment of $60,000 and a waiver of all claims and liabilities, including any not yet

known or suspected to exist by the parties.  (Exh. 7 to Declar. of Brian Egan.)  On October 28, 2008, CTI advised Callaway that it was refusing to execute the proposed mutual release because Callaway had not transferred inventory, nor paid cash, based on the use of trade credits for the purchase of media as required by the July 2003 assignment of the Spaulding Agreement to Callaway.

CTI sent an invoice to Callaway on October 31, 2008, for unpaid fees of $932,013.65 which represented 95% of the value of cash savings realized by Callaway from the use of trade credits to purchase media in 2003 and 2004.  Callaway questioned the basis of the October 31, 2008 invoice.

Defendant states that a phone conversation between CTI and Callaway occurred on November 22, 2008, in which CTI asserted that it was prepared to send a second invoice to Callaway based on Callaway's use of the trade credits balance from 2005 through 2008 in the amount of $7,981,287.20.  In a subsequent phone call on November 26, 2008, Brian Egan of CTI allegedly told Callaway's counsel that unless both invoices were paid by January 19, 2009, CTI would sue Callaway for the amounts owed.  Although Callaway does not suggest that this telephonic conversation never occurred, it disputes what was discussed during the call and strongly denies that a threat of litigation was communicated. (Oppo. Exh. 1, Patrick Swan, Jr. Declar. at ¶¶ 14-16.)

On January 5, 2009, CTI sent a second invoice to Callaway for 95% of the value of cash savings, $7,981,287.20,  realized by Callaway from the trade credits used to purchase media in 2005 through 2008.  Callaway did not communicate with CTI and did not make any payments by the January 19, 2009 deadline.  The next day, January 20, 2009, Callaway filed the present action in the Superior Court for the State of California, County of San Diego, for declaratory relief and damages related to the terms of use of trade credits and breaches of contract against CTI.  CTI removed this action on January 26, 2009.

On that same date, CTI filed a complaint against Callaway in the United States District Court for the Southern District of New York, seeking damages for breach of contract, unjust enrichment, and for an accounting for monies owed under the agreement concerning Callaway's

1 use of trade credits to purchase media. CTI's action was filed less than a week after Callaway's
2 case was filed here but prior to service of Callaway's complaint.

3      As noted above, CTI seeks to have this case, the first-filed action, transferred to the
4 District Court for the Southern District of New York. Callaway opposes the motion.

### Motion to Transfer, Stay or Dismiss

#### a. First-to-File Rule

"There is a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-5 (9th Cir. 1982). This doctrine, known as the first-to-file rule, "gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction." *Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002, 1006 (8th Cir. 1993). The rule "serves the purpose of promoting efficiency well and should not be disregarded lightly." *Church of Scientology of California v. United States Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979).

In applying the first-to-file rule, a court looks to three threshold factors: "(1) the chronology of the two actions; (2) the similarity of the parties, and (3) the similarity of the issues." *Z-Line Designs, Inc. v. Bell'O Int'l LLC*, 218 F.R.D. 663, 665 (N.D. Cal. 2003). If the first-to-file rule does apply to a suit, the court in which the second suit was filed may transfer, stay or dismiss the proceeding in order to allow the court in which the first suit was filed to decide whether to try the case. *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 622 (9th Cir.1991). In other words, the court with the first-filed action should normally decide whether an exception to the first-to-file rule applies. *Pacesetter*, 678 F.2d at 96 (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 185, 72 S.Ct. 219 (1952)); see also *Alltrade Inc.*, 946 F.2d at 628.

"Circumstances under which an exception to the first-to-file rule typically will be made include bad faith, anticipatory suit and forum shopping." *Id.* at 628 (internal citations omitted). Another exception to the first-to-file rule applies if "the balance of convenience weighs in favor

of the later-filed action." *Ward v. Follett Corp.*, 158 F.R.D. 645, 648 (N.D. Cal. 1994). This is analogous to the "convenience of parties and witnesses" on a transfer of venue motion pursuant to 28 U.S.C. § 1404(a). *Med-Tec Iowa, Inc. v. Nomos Corp.*, 76 F. Supp.2d 962, 970 (N.D. Iowa 1999); *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 133 (S.D.N.Y. 1994).

There is no dispute concerning the chronology of the two actions; the similarity of the parties, and the similarity of the issues. Therefore the issue is whether an exception to the first-to-file rule should be applied which would result in the transfer of this action to the Southern District of New York. CTI contends that Callaway filed this anticipatory action and engaged in forum shopping and further asserts that the balance of convenience weighs in favor of transfer of the first-filed case.

### 1. Anticipatory Action

A suit is "anticipatory" for the purposes of being an exception to the first-to-file rule if the plaintiff in the first-filed action filed suit acts on receipt of specific, concrete indications that a suit by the defendant was imminent. *Ward v. Follett Corporation*, 158 F.R.D. 645, 648 (N.D. Cal. 1994). Such anticipatory suits are disfavored because they are examples of forum shopping. *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 n. 3 (5th Cir. 1983). By recognizing this exception to the first-to-file rule, courts seek to eliminate the race to the courthouse door in an attempt to preempt a later suit in another forum. *Northwest Airlines v. American Airlines*, 989 F.2d 1002, 1007 (8th Cir. 1993).

Filing a declaratory action after receipt of an intent to sue letter favors a finding that the first-filed suit was done for anticipatory, forum shopping purposes. *See Amerada Petroleum Corp. v. Marshall*, 381 F.2d 661, 663 (5th Cir.1967). In *Ward,* the court recognized the need for "specific, concrete indications that a suit by defendant was imminent [ ]" for a suit to be declared anticipatory. *Ward*, 158 F.R.D. at 648.

As noted above, there a several facts in dispute concerning the terms of the parties' agreement, the existence of documents and the contents of phone conversations. In briefing, Callaway accuses CTI of fabrication of evidence. The parties have provided directly conflicting

declarations.  Of particular importance is CTI's contention that a date certain, January 19, 2009, was communicated directly to Callaway's counsel as the deadline for payment of the amount it claims Callaway owed in order to avoid litigation.  If January 19 was the specific deadline for Callaway to make payment in order to avoid litigation, its filing of the present action appears to be an anticipatory action meant to secure its forum choice.

Callaway declares that no such deadline was ever communicated to it by CTI by telephone conversation, and the January 19 deadline was CTI's invented afterthought in order to support transfer of this action to New York.  Instead, Callaway states that there was no rush to the courthouse because there was no threat of litigation by CTI but only an unsubstantiated claim for monies owed.

Most all case law addresses whether a written correspondence, such as a cease and desist letter, acts as specific, concrete indications that a suit by defendant was imminent.  Here, there is no written correspondence concerning a deadline for payment in order to avoid litigation.  Rather, CTI relies on an unrecorded phone call to show that Callaway was aware that litigation would be imminent.  CTI supports its contention that a firm deadline was communicated to Callaway with the declarations of Egan and Weichert, but Callaway's counsel, a participant in the phone conversation, declares that there was no discussion of a particular deadline for payment at all.

Upon reviewing the record, the Court cannot make a factual finding that CTI provided Callaway with specific, concrete indications that a lawsuit was imminent and therefore, Callaway filed the action in this Court in anticipation of CTI's lawsuit and to forum shop.  Accordingly, the Court finds that departing from the first-to-file rule on this basis is unwarranted.

### 2. Balance of Convenience

As noted above, another exception to the first-to-file rule applies if "the balance of convenience weighs in favor of the later-filed action." *Ward v. Follett Corp.*, 158 F.R.D. 645, 648 (N.D. Cal. 1994). This is analogous to the "convenience of parties and witnesses" on a transfer of venue motion pursuant to 28 U.S.C. § 1404(a).  As noted above, the court with the

first-filed action should normally weigh the balance of convenience and decide whether this exception to the first-to-file rule should be applied. *Pacesetter*, 678 F.2d at 96 (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 185 (1952)); see also *Alltrade* Inc., 946 F.2d at 628.

Section 1404(a) of Title 28 of the United States Code provides that even when venue is proper, the court has discretion to transfer an action "[f]or the convenience of parties and witnesses, in the interest of justice, . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of this section is to "prevent the waste 'of time, energy and money' and to 'protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (*quoting Continental Grain Co. v. Barge F.B.L.-585*, 364 U.S. 19, 26-27 (1960)). The party requesting the transfer bears the burden of showing that the balance of conveniences weighs heavily in favor of the transfer in order to overcome the strong presumption in favor of the plaintiff's choice of forum. *Piper Aircraft v. Reyno*, 454 U.S. 235, 255-56 (1981); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

To support a motion to transfer under § 1404(a), the moving party must first show that the proposed transferee court possesses subject matter jurisdiction over the action, that the parties would be subject to personal jurisdiction in the transferee court, and that venue would have been proper in the transferee court. *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960); *A.J. Indus., Inc. v. United States Dist. Ct. for the Cent. Dist. of Cal.*, 503 F.2d 384, 386 (9th Cir. 1974). If this requirement is established, the Court next looks at whether the convenience of parties and witnesses, and the interests of justice favor transfer. 28 U.S.C. § 1404(a). Courts in the Ninth Circuit weigh several considerations when determining whether transfer is appropriate: (1) plaintiff's choice of forum; (2) convenience of the parties; (3) convenience of the witnesses and availability of compulsory process; (4) ease of access to the evidence; (5) feasibility of consolidation of other claims; (6) familiarity of each forum with the applicable law; (7) any local interest in the controversy; and (8) the relative court congestion and time of trial in each forum. *Decker Coal*, 805 F.2d at 843; *see Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th

Cir.), *cert. denied*, 531 U.S. 928 (2000).

### a. Threshold Issue

Transfer under 28 U.S.C. § 1404(a) is limited to courts where the action "might have been brought." *Hoffman*, 363 U.S. at 344; *A.J. Indus.*, 503 F.2d at 386. There is no dispute here that the transferee court has personal jurisdiction over defendants, subject matter jurisdiction over the claims, and proper venue had the claims originally been brought in that court. *See Hoffman*, 363 U.S. at 343-44.

### b. The Convenience of Parties and Witnesses, and the Interests of Justice

As noted above, once the initial inquiry is satisfied, the court then weighs several practical considerations when determining whether transfer is appropriate.

#### 1. Plaintiff's Choice of Forum

Courts generally afford considerable weight to a plaintiff's choice of forum when deciding a motion to transfer. *Piper Aircraft*, 454 U.S. at 255; *Decker Coal*, 805 F.2d at 843. But if the transactions giving rise to the action lack a significant connection to the plaintiff's chosen forum, the plaintiff's choice of forum is given considerably less weight. *See Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968) (a plaintiff's choice of forum commands less consideration where the operative facts have not occurred within the forum and the forum has no particular interest in the parties or subject matter); WILLIAM W. SCHWARZER ET AL., CALIFORNIA PRACTICE GUIDE: FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 4:731 at 4-86 (The Rutter Group 2009)  The Court must also consider the parties' business contacts with the chosen forum, including those relating to the plaintiff's causes of action. *Pacific Car*, 403 F.2d at 954.

CTI contends that this action has a more significant connection to New York than to California notwithstanding Callaway's corporate presence in this district and its contention that it made all its decisions to enter into the various agreements and transaction from California. The negotiations and execution of the initial agreement between Spalding and CTI occurred in New York and there is a choice of law provision indicating that the agreement is governed by

New York law.  Further, CTI states that negotiation of the Spalding agreement assignment to Callaway occurred exclusively in New York City.

But Callaway contends that all of the written contractual negotiations were exchanged between CTI in New Jersey and Callaway in California; Callaway decided to engage KSL Media in California; and it placed its media orders with KSL Media in California.  How Callaway engaged and made use of its contacts with KSL is not of particular importance.   The agreement(s) made between Callaway and CTI are the focus of the action and Callaway's choice of forum does not have a significant connection to those agreements in terms of contract formation and execution.  Thus, while giving Callaway's choice of forum some weight, the Court finds that the weight is not significant.

### 2. Convenience of the Parties

A defendant wishing to transfer an action must show that the burden on the plaintiff if the action is transferred is less than the burden on defendant if the action is not transferred. *See Merchants Nat. Bank v. Safrabank (California)*, 776 F. Supp. 538, 541-42 (D. Kan. 1991); *Fink v. Declassis*, 738 F. Supp. 1195, 1198 (N.D. Ill. 1990); *Kirschner Bros. Oil, Inc. v. Pannill*, 697 F. Supp. 804, 807 (D. Del. 1988).  Here, because both parties are corporations, Callaway suggests the relative means and burdens on the parties are inconsequential.  As CTI notes, however, it is a small business – "a one-man corporation" – unlike Callaway.   As a result of the disparity in size, CTI notes that litigating this action in California will disrupt its business unlike any burden Callaway may experience having to litigate in New York.   Because CTI has minimal contacts in California and it would be classified as a small business, the burden of cost for defending this action in California would be significant on CTI but the burden on a national corporation such a Callaway to appear in New York would be insignificant.  Thus, this factor weighs in favor of transfer.

### 3. Convenience of the Witnesses and Availability of Compulsory Process

One of the most important factors in weighing whether to transfer an action is the convenience of the witnesses.  *In re Eastern Dist. Repetitive Stress Injury Litig.*, 850 F. Supp.

188, 194 (E.D.N.Y. 1994). To demonstrate inconvenience, the moving party:

> should produce information regarding the identity and location of the witnesses, the content of their testimony, and why such testimony is relevant to the action. [citation] The court will consider not only the number of witnesses located in the respective districts, but also the nature and quality of their testimony in relationship to the issues in the case.

*Steelcase, Inc. v. Haworth, Inc.*, 41 U.S.P.Q.2d 1468, 1470 (C.D. Cal. 1996).

Defendant provides what it contends are 10 key witnesses who reside within 100 miles of the Southern District of New York, including Ron Drapeau, Callaway's former CEO who currently resides in Connecticut.[1] The witnesses it discusses are relevant to the issues involved in this case and they reside in or near New York. Although Callaway suggests that CTI's representations concerning where relevant witnesses reside "cannot be taken at face value," Callaway has not made a showing that CTI's statements are suspect. Therefore, the Court finds that CTI has made a showing for transfer of this action to New York.

### 4. Relative Ease of Access to the Evidence

The location of evidence is not a significant factor in a basic contract interpretation case such as this one. Accordingly, this factor is neutral with respect to transfer.

### 5. Familiarity of Each Forum with the Applicable Law

Either court is equally competent to address claims arising out of state law whether that law is from New York or California. Therefore, this factor is neutral with respect to transfer.

### 6. Relative Court Congestion

Although CTI does not address the factor of relative court congestion, the Court takes judicial notice that the time to trial for a civil case is essentially the same in the Southern District of California and the Southern District of New York. Accordingly, this factor is neutral with respect to transfer.

### 7. Interest of Justice

"The question of which forum will better serve the interest of justice is of predominant importance on the question of transfer, and the factors involving convenience of parties and

---

[1] The parties dispute whether Mr. Drapeau is within the subpoena power of the New York district court.

witnesses are in fact subordinate." *Madani v. Shell Oil Co.*, 2008 WL 268986, *2 (N.D. Cal., Jan. 30, 2008) (quotation omitted); *see also Mussetter Distrib., Inc. v. DBI Beverage Inc.*, 2009 WL 1992356, *6 (E.D. Cal., July 8, 2009); *Amazon.com v. Cendant Corp.*, 404 F. Supp.2d 1256, 1261 (W.D. Wash.2005).

"An important consideration in determining whether the interests of justice dictate a transfer of venue is the pendency of a related case in the transferee forum." *Madani*, 2008 WL 268986, *2); *Bratton v. Schering-Plough Corp.*, 2007 WL 2023482, *5 (D. Ariz., July 12, 2007) ("In general, cases should be transferred to districts where related actions are pending."). "The feasibility of consolidation is a significant factor in a transfer decision, although even the pendency of an action in another district is important because of the positive effects it might have in possible consolidation of discovery and convenience to witnesses and parties." *A.J. Indus., Inc. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 503 F.2d 384, 386-87 (9th Cir. 1974) (citations omitted). "In addition to the possible consolidation of discovery and the conservation of time, energy and money, centralizing the adjudication of similar cases will also avoid the possibility of inconsistent judgments." *Mussetter Distrib.*, 2009 WL 1992356, *5; *see also Jolly*, 2005 WL 2439197,*2 ("Litigation of related claims in the same tribunal is strongly favored because it facilitates efficient, economical and expeditious pre-trial proceedings and discovery and avoids duplic[ative] litigation and inconsistent results."); *Argonaut Ins. Co. v. MacArthur Co.*, 2002 WL 145400, *4 (N.D. Cal., Jan.18, 2002) ("The best way to ensure consistency is to prevent related issues from being litigated in two separate venues.").

Here, it is undisputed that CTI's case against Callaway is currently pending in the United States District Court for the Southern District of New York.  The Court finds that the transfer of this action to the Southern District of New York would serve the interest of justice due to the possible consolidation of discovery and the conservation of time, energy and money, and the avoidance of the possibility of inconsistent judgments.

### c. Summary

Having balanced the material circumstances of this case in light of the factors relevant to motions to transfer under section 1404(a), the Court finds that a transfer of the action to the

Southern District of New York would be for the convenience of the parties and witnesses and would serve the interest of justice.

Transfer of the first-filed Callaway action is appropriate because New York is the place where the majority of witnesses are located; consolidation of the first-filed action with the New York action is feasible; the New York district court has personal jurisdiction over Callaway; and the suit could have been properly brought in New York. The burden on CTI to litigate in California is substantially greater than the burden on Callaway.

The Court is satisfied that CTI has met its burden of demonstrating the balance of conveniences weighs in favor of transfer and equitable considerations favor of a departure from the first-to-file rule. Accordingly, the motion to transfer will be granted.

### Motion to Dismiss Plaintiff's Fourth Cause of Action

Because the Court finds transfer of this action to the District of New York is appropriate, the court need not reach the parties' dispute concerning the sufficiency of plaintiff's fourth cause of action under Federal Rule of Civil Procedure 12(b)(6).

### *Ex Parte* Motions

Callaway has filed two *ex parte* motions concerning additional evidence it would like to present in opposition to CTI's motion to transfer venue. The Court has considered the materials sought to be introduced, CTI's objections thereto and will allow the documents to be filed.

### CONCLUSION

For the reasons set forth above, **IT IS ORDERED**:

1. CTI's motion to transfer venue to the United States District Court for the Southern District of New York is **GRANTED**. The Clerk of the Court is directed to **TRANSFER** the above-captioned case to the Southern District of New York forthwith. Upon transfer, this action shall be closed.

2. CTI's motion to dismiss plaintiff's fourth cause of action is **DENIED WITHOUT PREJUDICE**.

///

///

3. Callaway's *ex parte* motions to file declarations and newly discovered evidence is

**GRANTED.**

**IT IS SO ORDERED.**

DATED: March 1, 2010

*M. James Lorenz*
M. James Lorenz
United States District Court Judge

COPY TO:

HON. LOUISA S. PORTER
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL